Mollie T. CALDWELL, Plaintiff-Appellant,

v.

George T. WALLACE, Governor of the State of Alabama, et al., Defendants-Appellees.

No. 83–7627.

United States Court of Appeals, Eleventh Circuit.

March 20, 1985.

Legal Services Corp. of Alabama, Inc., Mary Ann Ross Stackhouse, Gadsden, Ala., for plaintiff-appellant.

Terry K. Childers, Capell, Howard, Knabe & Cobbs, Herman H. Hamilton, Jr., Shapard D. Ashley, Montgomery, Ala., for defendants-appellees.

\* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

Before HILL and HENDERSON, Circuit Judges, and WISDOM \*, Senior Circuit Judge.

PER CURIAM:

We observe at the outset that the adage, "hard cases make bad law," is best viewed as a caveat, not a mandate.

Mollie T. Caldwell, the appellant, is a 93-year-old resident of the state of Alabama. Mrs. Caldwell entered Jacksonville Nursing Home, Jacksonville, Alabama, in January, 1977. That same month she applied for medicaid benefits to pay for the cost of nursing home care. The application was approved, and Mrs. Caldwell began to receive medicaid benefits on February 1, 1977. Mrs. Caldwell's original medicaid application was completed and signed for her by her son, William V. Caldwell, in his capacity as medicaid sponsor.[1] At the time the events in question transpired, it was the Agency's policy to correspond almost exclusively with the sponsor in matters affecting the recipient.

In late December, 1981, the Agency sent Mr. Caldwell the forms necessary for an annual review of his mother's eligibility for benefits. Mr. Caldwell completed, signed and returned the forms. On the basis of the information provided, the Agency determined that Mrs. Caldwell had held a life estate in property in the state of Tennessee and that this life estate had been sold, at the behest of the remaindermen, with approximately $8,000 allocated to Mrs. Caldwell as compensation for her life estate. The Agency thereafter contacted Mr. Caldwell and advised him that his mother's receipt of this money rendered her ineligible for medicaid and that the maximum income she could receive, without becoming ineligible, was $1,500. Mrs. Caldwell could, however, use the money for her own care,

1. A medicaid sponsor is an individual, usually a family member or friend, who agrees to act for the medicaid applicants or recipients in supplying information to the agency and in filling out the necessary forms.

down to this amount, and become eligible again. Mr. Caldwell then told the Agency that his mother had given him the money, and the Agency informed him that this gift rendered Mrs. Caldwell ineligible, as a penalty, for a period of two years. After denial of eligibility based upon gift and administrative review of that decision, Mr. Caldwell requested a hearing.

Notice of a hearing was mailed by the Agency to Mr. Caldwell, and a hearing was held on April 16, 1982. Mr. Caldwell represented his mother and testified that she had given him the proceeds of the Tennessee land sale. On the basis of this testimony, the Hearing Officer issued a decision terminating Mrs. Caldwell's medicaid eligibility. The Agency does not dispute that all communications concerning this matter, including the notice of hearing and notices of termination, were sent to William V. Caldwell and not to his mother, Mollie T. Caldwell.

Mrs. Caldwell brought suit in federal district court alleging violation of federal medicaid law and fourteenth amendment due process. She appeals from the district court's order granting the state's motion for summary judgment and dismissing the complaint. Three issues are raised: (1) whether the notices of hearing and of termination of benefits given by the Agency in this case were inadequate under federal medicaid statutes and regulations, (2) whether this notice violates fourteenth amendment due process requirements, and (3) whether the appellants can recover retroactive benefits denied as a consequence of the allegedly improper notice by the Agency.

We turn first to the question whether the notice given in this case was adequate under federal statutes and regulations. The requirements of state medical assistance plans are set out in 42 U.S.C. § 1396a. In pertinent part that statute provides

A State plan for medical assistance must—

. . . .

(3) provide for granting an opportunity for a fair hearing before the State Agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness. . . .

42 U.S.C. § 1396a(a)(3). Regulations promulgated under this statute require that the Agency notify a medicaid recipient at the time of any action affecting his claim. 42 C.F.R. § 431.206(c)(2). The notice must state the action the Agency intends to take, the reasons for that intended action, the regulatory or statutory basis for that action, and an explanation of rights to an evidentiary hearing and to continuing medicaid benefits should a hearing be requested. 42 C.F.R. § 431.210. With these requirements in mind, we evaluate the notice afforded Mrs. Caldwell by the Agency.

It is undisputed that every communication from the Agency regarding the termination of benefits or the hearing to review that termination was sent to William V. Caldwell, and that no written notice was at any time provided to the appellant herself by the Agency. The Agency argues, however, that principles of agency law and general policy considerations render unworkable a general rule invalidating, as ineffective, notice to a recipient's sponsor because it is not notice to the recipient herself. We agree, and we do not promulgate such a rule. Indeed, we believe that the procedures allowing a sponsor to act on behalf of a potentially aged and often infirm relation are laudatory and essential to the adequate provision of medical care. Under the bizarre facts of this case, however, there is one additional consideration which requires us, in equity and good conscience, to reach a result contrary to that urged by the state.

William V. Caldwell, the recipient of the Agency's repeated notices, and his mother's sponsor, had interests in conflict with those of the recipient he purported to represent in these proceedings. That conflict was apparent to the Agency. If, as he testified under oath at the hearing, his mother made a gift of the money to him, she suffered a penalty of two years of ineligibility. If, as the appellant indicated

34567890

in oral argument, such a gift was neither intended nor made, Mr. Caldwell was possibly in a position of having converted the funds to his own use. This was the posture of the advocate to whom notice of termination and hearing was given. Obviously, William V. Caldwell's best interests were served by a factual finding which led to his mother's penalty. Under these unique circumstances, we find the given notice to be ineffective.

Having found the notice in this case ineffective under the federal statute and regulations, we decline to pass upon the appellant's constitutional claim. *New York City Transit Authority v. Beazer,* 440 U.S. 568, 582–83, 99 S.Ct. 1355, 1364–65, 59 L.Ed.2d 587 (1979).

 The appellant also seeks to recover, retroactively, benefits lost during the period of alleged deprivation without notice. As the appellant acknowledges, however, the Eleventh Amendment bars suits for monetary relief against state officials when the state is the real party in interest and any liability would accrue to the public fisc. *Edelman v. Jordan,* 415 U.S. 651, 663–67, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974). Accordingly, without passing on the issue of appellant's entitlement to retroactive benefits, we hold that appellant may not recover those benefits in federal court. *See* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4232 (1978).

### SUMMARY

We emphasize that our holding in this case is narrow and unique to the circumstances presented. It was undisputed before this court that the only notice given by the Agency was sent to a person with conflict of interest obvious to the Agency. On the basis of this notice the Agency proceeded, through hearing, to a termination of benefits. We hold the given notice ineffective not because it was given to the sponsor of a medicaid recipient, but because of the glaring possibility that the sponsor's conflict of interest prevented Mollie Caldwell from using her money for her own support, down to the $1500.00 limit, thus avoiding the penalty of ineligibility because of gift. It is the lack of notice, and not the issue of entitlement, that concerns us. On this basis we reverse and remand to the district court for issuance of an order directing the Agency to serve personal notice of hearing on Mrs. Caldwell so that she may then undertake to represent herself or obtain representation of another whose counsel will be untainted by self-interest.

The judgment of the district court is REVERSED and the case REMANDED for proceedings consistent with this opinion.